**FILED**

January 18, 2024

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY: _____
MGR

DEPUTY

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **GARY E. GEIGENMILLER,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 5:23-cv-1505-XR** |
| | § | |
| **CARRINGTON MORTGAGE** | § | |
| **SERVICES, LLC,** | § | |
| | § | |
| **Defendant/Counter-Plaintiff/** | § | |
| **Third-Party Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **GARY E. GEIGENMILLER, AS** | § | |
| **INDEPENDENT EXECUTOR OF THE** | § | |
| **ESTATE OF ERNEST F.** | § | |
| **GEIGENMILLER, JR.,** | § | |
| | § | |
| **Third Party Defendant.** | § | |

## DEFENDANT'S COUNTERCLAIM AND THIRD-PARTY CLAIM

Defendant Carrington Mortgage Services, LLC ("Carrington" or "Defendant") files this
its Counterclaim and Third-Party Claim and shows as follows:

### A. Parties and Jurisdiction

1.      Carrington is a Defendant/Counter-Plaintiff/Third-Party Plaintiff in this case.

2.      Plaintiff Gary E. Geigenrmiller ("Plaintiff") has previously appeared in this cause.
He may be served through his counsel of record in this case.

3.      Third-Party Defendant Gary E. Geigenmiller, as Independent Executor of the
Estate of Ernest F. Geigenmiller, Jr., is an individual and citizen of Texas and may be served at
his residence, 8635 Old Corpus Christi Highway, San Antonio, TX 78223, or such other place as
he may be found. <u>Summons is requested.</u>

**B.  Summary of Facts**

4.      On or about May 26, 2017, Ernest F. Geigenmiller, Jr. ("Borrower") executed a Note ("Note") for $127,500.00 payable to One Reverse Mortgage, LLC ("One Reverse"). as lender on a loan secured by the real property commonly known as 8635 Old Corpus Christi Highway, San Antonio, TX 78223 (the "Property") and more particularly described as follows:

> LAND SITUATED IN THE CITY OF SAN ANTONIO IN THE COUNTY OF BEXAR IN THE STATE OF TX NEW CITY BLOCK 10923 BLOCK 4, LOT 2A

(the "Property"). A true and correct copy of the Note is attached hereto as **Exhibit A**.

5.      Concurrently with execution of the Note, Borrower executed an Adjustable Rate Deed of Trust ("Deed of Trust" and together with the Note, the "Loan Agreement") with said Deed of Trust being recorded in the official public records of Bexar County, Texas at Document No. 20170107989. A true and correct copy of the Deed of Trust is attached hereto as **Exhibit B**.

6.      Under the terms of the Note and Deed of Trust, which is a reverse mortgage, the lender was permitted to foreclose on the Property upon the passing of Borrower.  *See* **Exhibit B.** Borrower passed away on or about September 5, 2022.

7.      One Reverse indorsed the Note in blank.  Carrington has physical possession of the original Note.

8.      The Deed of Trust has been assigned twice.  On or about October 20, 2022 Mortgage Electronic Registration Systems, Inc. ("MERS"), the original beneficiary of the Deed of Trust as nominee for One Reverse and its successors and assigns, executed an Assignment of Deed of Trust, conveying its interest in the Deed of Trust to Reverse Mortgage Funding, LLC, and its Successors and Assigns.  This Assignment of Deed of Trust was recorded in the Official

Public Records of Bexar County on or about November 1, 2022 at Instrument No. 20220259135.

9.      On or about January 9, 2023, Reverse Mortgage Funding, LLC, by Compu-Link Corporation dba Celink as Attorney in Fact, executed an Assignment of Deed of Trust, conveying its interest in the Deed of Trust to Carrington.  This Assignment of Deed of Trust was recorded in the Official Public Records of Bexar County on or about January 11, 2023 at Instrument No. 20230005237.

10.      Carrington is the current beneficiary of the Deed of Trust and holder of the Note.

11.      On September 21, 2022, Reverse Mortgage Funding, LLC, mailed a Notice of Mortgage Due and Payable Notification to the Estate of Ernest F. Geigenmiller to the Property. A true and correct copy of this September 21, 2022 Notice is attached hereto as **Exhibit C**. At present, the Loan Agreement is in default and the sums necessary to pay off the loan balance have not been tendered.

## C.  Cause of Action—Foreclosure

12.      The foregoing paragraphs are incorporated by reference for all purposes.

13.      Carrington asserts a cause of action for foreclosure. The Loan is a contract, and Carrington fully performed its obligations under it. The Loan is a reverse mortgage that is now due and payable due to the passing of Borrower.

14.      Carrington seeks a judgment for foreclosure together with an order of sale issued to the Bexar County sheriff or constable, directing the sheriff or constable to seize and sell the Property in satisfaction of the Loan Agreement debt, pursuant to Texas Rule of Civil Procedure 309.

15.      In the alternative, Carrington seeks a judgment for the non-judicial foreclosure sale of the Property.

16.    All conditions precedent to Carrington's right to enforce the Loan and to obtain the relief requested herein have been performed or have occurred.

17.    Carrington has been forced to hire the undersigned attorneys to seek an order allowing foreclosure as a result of the default on the Loan Agreement. Carrington is therefore entitled to and seeks judgment for its reasonable attorney fees in this action to be included in the amounts owed on the Loan only and not as a personal judgment against them.

WHEREFORE, PREMISES CONSIDERED, Carrington prays the Court enter judgment that: Third-Party Defendant be summoned to appear; Plaintiff take nothing on his claims; Carrington have and recover a judgment for foreclosure under Texas Rule of Civil Procedure 309, plus pre-judgment and post-judgment interest or alternatively for non-judicial foreclosure; attorney fees; and all costs of suit. Carrington further requests such other and further relief to which it may be entitled.

Respectfully submitted,

By:   _/s/ Mark D. Cronenwett___
**MARK D. CRONENWETT**
Texas Bar No. 00787303
mcronenwett@mwzmlaw.com

**MACKIE WOLF ZIENTZ & MANN, P. C.**
14160 North Dallas Parkway, Suite 900
Dallas, TX 75254
Telephone: (214) 635-2650
Facsimile: (214) 635-2686

**ATTORNEYS FOR
DEFENDANT/COUNTER-PLAINTIFF/
THIRD-PARTY PLAINTIFF**

## CERTIFICATE OF SERVICE

      I hereby certify that a true and correct copy of the foregoing instrument was served via ECF notification on January 15, 2024, upon the following:

Matthew J. Obermeier
Law Offices of Matthew J. Obermeier, P.C.
342 W Woodlawn, Ste. 103
San Antonio, TX 78212
*Attorney for Plaintiff*

*/s/ Mark D. Cronenwett*
**MARK D. CRONENWETT**

# EXHIBIT A

# ADJUSTABLE RATE NOTE
## (Texas Home Equity Conversion)
### (Adjusting Variable Rate Feature)

May 26, 2017

MIN Number: ███████████

PROPERTY ADDRESS

FHA Case Number: ███████

Loan Number ███████

    8635 Old Corpus Christi Hwy
    San Antonio, TX 78223

1. **DEFINITIONS**

"Borrower" means each person signing at the end of this Note. The term does not include his or her successors or assigns.

"Change Date" means each date on which the interest rate could change.

"Current Index" means the most recent Index figure available thirty (30) days before the Change Date.

"Eligible Non-Borrowing Spouse" means a Non-Borrowing Spouse who meets, and continues to meet, the Qualifying Attributes requirements established by the Secretary that the Non-Borrowing Spouse must satisfy in order to be eligible for deferral of the due and payable status.

"Index" means the One-Year London Interbank Offered Rate ("LIBOR") as made available in the "Money Rates" section of the Wall Street Journal rounded to three digits to the right of the decimal point. The Current Index means the most recent Index figure available 30 days before the Change Date, and if the day that is 30 days before the Change Date is not a Sunday or Monday and not the first business day of that week, the Current Index will be the Index available the first business day of that week that the Wall Street Journal is published. If the day that is 30 days before the Change Date is a Sunday or Monday and not the first business day of the week, the Current Index will be the Index available the first business day of the immediately prior week that the Wall Street Journal is published.

"Ineligible Non-Borrowing Spouse" means a Non-Borrowing Spouse who does not meet the Qualifying Attributes requirements established by the Secretary that the Non-Borrowing Spouse must satisfy in order to be eligible for deferral of the due and payable status.

"Lender" means **One Reverse Mortgage, LLC** and its successors and assigns.

"Loan Agreement" means the Home Equity Conversion Mortgage Adjustable Rate Loan Agreement dated **May 26, 2017** by and between the Borrower and Lender.

"Non-Borrowing Spouse" means the spouse, N/A, as determined by the law of the state in which the spouse, N/A, and Borrower, N/A, reside or the state of celebration, of the HECM Borrower, N/A, at the time of closing and who is not a Borrower. For purposes of this Note, the status of "spouse" shall be determined by the State of Celebration if there is a conflict as to whether or not the Borrower is married between the State of Celebration and the state where the Borrower resides. "State of Celebration" means the state in which the marriage ceremony was performed.

"Property" means Borrower's property identified in the Security Instrument.

"Property Address" means the address provided above.

"Qualifying Attributes" means those requirements established by the Secretary that the Non-Borrowing Spouse must satisfy in order to be eligible for deferral of the due and payable status.

"Secretary" means the Secretary of Housing and Urban Development or his or her authorized representatives.

"Security Instrument" means the mortgage, deed of trust, security deed or other security instrument which is signed by Borrower together with the Loan Agreement and which secures the amounts advanced under this Note.

2. **BORROWER'S PROMISE TO PAY; INTEREST**

In return for amounts to be advanced by Lender up to a maximum principal amount of **One Hundred Twenty-Seven Thousand Five Hundred and 00/100 Dollars** (U.S. **$127,500.00**), to or for the benefit of Borrower under the terms of a Home Equity Conversion Loan Agreement dated **May 26, 2017** ("Loan Agreement"), Borrower promises to pay to the order of Lender a principal amount equal to the sum of all Loan Advances made under the Loan Agreement with interest. Interest will be charged on unpaid principal at the rate of **Four and 583/1000's percent (4.583%)** per year until the full amount of principal has been paid. The interest rate may change in accordance with Paragraph 5 of this Note. At the end of each month, accrued interest shall be added to, and made part of, the principal balance as a Loan Advance and shall likewise thereafter bear interest.

One Reverse Mortgage, LLC
Company - NMLS #: 2052 - Loan Number: 3364717230

Loan Originator: Patrick McGahan
Loan Originator NMLS #: 871683

*Texas – 1st Note (Adjustable)*         *Page 1 of 4*         © Bay Docs, LLC 03/01/2015

q03364717230 0140 034 0104



Carrington - Geigenmiller000017

**The interest rate required by this Paragraph 2 and Paragraph 5 of this Note is the rate of interest Borrower will pay on the outstanding balance both before and after this Note becomes due and payable as described in Paragraph 7 of this Note, until repayment in full is made.**

3.  **PROMISE TO PAY SECURED**
Borrower's promise to pay is secured by the Security Instrument. The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

4.  **MANNER OF PAYMENT**
(A)  **Time.**   Borrower shall pay all outstanding principal and accrued interest to Lender upon receipt of a notice by Lender requiring immediate payment in full, as provided in Paragraph 7 of this Note.

(B)  **Place.**   Payment shall be made at **9920 Pacific Heights Blvd., Suite 350, San Diego, CA 92121** or any such other place as Lender may designate in writing by notice to Borrower.

(C)  **Limitation of Liability.**  Borrower shall have no personal liability for payment of the debt.  Lender shall enforce the debt only through sale of the Property. If this Note is assigned to the Secretary, the Borrower shall not be liable for any difference between the mortgage insurance benefits paid to Lender and the outstanding indebtedness, including accrued interest, owed by Borrower at the time of the assignment.

(D)  **Forfeiture by Lender.**  If Lender fails to make Loan Advances as required by the Loan Documents (this Note, Security Instrument and Loan Agreement) and if Lender fails to cure the default within a reasonable time as required in the Loan Documents after notice, by certified mail, from Borrower, then Lender will forfeit all principal and interest advanced under this Note. However such forfeiture does not apply if this Note is endorsed to the Secretary of Housing and Urban Development, or other governmental instrumentality in order to cure the default.

5.  **INTEREST RATE CHANGES**
(A)  **Change Date.**  The interest rate may change on the first day of **June, 2018 and on that day of each succeeding year.** "Change Date" means each date on which the interest rate could change.

(B)  **The Index.**  Beginning with the first Change Date, the interest rate will be based on an Index chosen by the Borrower. If the Index (as defined above) is no longer available, Lender will use as a new Index any index prescribed by the Secretary. Lender will give Borrower notice of the new Index.

(C)  **Calculation of Interest Rate Changes.**  Before each Change Date, Lender will calculate a new interest rate by adding a margin of **2.860** percentage points **(2.860%)** to the Current Index.  Subject to the limits stated in Paragraph 5(D) of this Note, this amount will be the new interest rate until the next Change Date.

(D)  **Limits on Interest Rate Changes.**       The interest rate will never increase or decrease by more than two percentage points (2.0%) on any single Change Date.The interest rate will never be more than five percentage points (5.0%) higher or lower than the initial interest rate stated in Paragraph 2 of this Note.

(E)  **Notice of Changes.**  Lender will give notice to Borrower of any change in the interest rate.  The notice must be given at least 25 days before the new interest rate takes effect, and must set forth (i) the date of the notice, (ii) the Change Date, (iii) the old interest rate, (iv) the new interest rate, (v) the Current Index and the date it was published, (vi) the method of calculating the adjusted interest rate, and (vii) any other information which may be required by law from time to time.

(F)  **Effective Date of Changes.**  A new interest rate calculated in accordance with Paragraphs 5(C) and 5(D) of this Note will become effective on the Change Date, unless the Change Date occurs less than 25 days after Lender has given the required notice. If the interest rate calculated in accordance with Paragraphs 5(C) and 5(D) decreased, but Lender failed to give timely notice of the decrease and applied a higher rate than the rate which should have been stated in a timely notice, then Lender shall recalculate the Principal Balance owed under this Note so it does not reflect any excessive interest.

(G)  **Effect of Changes.**  Lender shall not reduce the amount or number of advances under this Note because of an adjustment in the interest rate.

6.  **BORROWER'S RIGHT TO PREPAY**
A Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty. Any amount of debt prepaid will first be applied to reduce the principal balance of the Second Note described in Paragraph 11 of this Note and then to reduce the principal balance of this Note.

All prepayments of the principal balance of this Note shall be applied by Lender as follows:

First, to that portion of the principal balance representing aggregate payments for mortgage insurance premiums;

Second, to that portion of the principal balance representing aggregate payments of servicing fees;

Third, to that portion of the principal balance representing accrued interest due under this Note; and

---



q03364717230 0140 034 0204

Carrington - Geigenmiller000018

Fourth, to the remaining portion of the principal balance. A Borrower may specify whether a prepayment is to be credited to that portion of the principal balance representing monthly payments or the line of credit. If Borrower does not designate which portion of the principal balance is to be prepaid, Lender shall apply any partial prepayments to an existing line of credit or create a new line of credit. Any partial payments shall be made available to Borrower by increasing the amount of Borrower's monthly payments and/or increasing the amount available to Borrower for Loan Advances under a line of credit

**7.   IMMEDIATE PAYMENT IN FULL.**

**(A) Death.**

(i)   Except as provided in paragraph 7(A)(ii), Lender may require immediate payment in full of all outstanding principal and accrued interest if a Borrower dies and the Property is not the Principal Residence of at least one surviving Borrower.

(ii)   Deferral of Due and Payable Status. Lender may not require immediate payment in full of all outstanding principal and accrued interest if a Non-Borrowing Spouse is identified in this Note qualifies as an Eligible Non-Borrowing Spouse and provided the following conditions are, and continue to be, met:

a.   Such Eligible Non-Borrowing Spouse remained the spouse of the Borrower, identified in this Note, for the duration of the Borrower's lifetime;

b.   Such Eligible Non-Borrowing Spouse has occupied, and continues to occupy the Property as [his/her] Principal Residence;

c.   Such Eligible Non-Borrowing Spouse has established legal ownership or other ongoing legal right to remain in the Property;

d.   All other obligations of the Borrower under this Note, the Loan Agreement and the Security Instrument continue to be satisfied; and

e.   This Note is not eligible to be called due and payable for any other reason.

This sub-paragraph (ii) is inapplicable or null and void if an Eligible Non-Borrowing Spouse is or becomes an Ineligible Non-Borrowing Spouse at any time. Further, during a deferral of the due and payable status, should any of the conditions for deferral cease to be met such a deferral shall immediately cease and the Note will become immediately due and payable in accordance with the provisions of 7(A)(i) of this Note.

**(B) Sale.** Lender may require immediate payment in full of all outstanding principal and accrued interest if a Borrower conveys all of his or her title to the Property and no other Borrower retains title to the Property in fee simple or on a leasehold interest as set forth in 24 CFR 206.45(a). A deferral of due and payable status is not permitted when a Lender requires immediate payment under this paragraph.

**(C) Other Grounds.**            Lender may require immediate payment in full of all outstanding principal and accrued interest, upon approval of the Secretary, if:

(i)   The Property ceases to be the Principal Residence of a Borrower for reasons other than death and the Property is not the Principal Residence of at least one other Borrower; or

(ii)   For a period of longer than twelve (12) consecutive months, a Borrower fails to occupy the Property because of physical or mental illness and the Property is not the Principal Residence of at least one other Borrower; or

(iii) Borrower fails to maintain the priority of Lender's lien on the Property, after Lender gives notice to Borrower, by promptly discharging any lien that has priority or may obtain priority over the Lender's lien within ten (10) days after the date Borrower receives the notice. Lender shall not require immediate payment in full if Borrower: (A) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (B) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings so as to prevent the enforcement of the lien or forfeiture of any part of the Property; or (C) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to all amounts secured by Lender's lien on the Property

A deferral of due and payable status is not permitted when a Lender requires immediate payment in full under Paragraph 7(C).

**(D) Payment of Costs and Expenses.** If Lender has required immediate payment in full, as described above, the debt enforced through sale of the Property may include costs and expenses, including reasonable and customary attorney's fees, associated with enforcement of this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

**(E) Trusts.** Conveyance of a Borrower's interest in the Property to a trust which meets the requirements of the Secretary, or conveyance of a trust's interest in the Property to a Borrower, shall not be considered a conveyance for purposes of this Paragraph. A trust shall not be considered an occupant or be considered as having a Principal Residence for purposes of this Paragraph.

**8.   WAIVERS**

One Reverse Mortgage, LLC                                                                        Loan Originator: Patrick McGahan
Company - NMLS #: 2052 - Loan Number: 3364717230                                  Loan Originator NMLS #: 871683

*Texas – 1ˢᵗ Note (Adjustable)*                              *Page 3 of 4*                              © *Bay Docs, LLC 03/01/2015*



q03364717230 0140 034 0304

Carrington – Geigenmiller000019

Borrower waives the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due." Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

9. **GIVING OF NOTICES**
Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the Property Address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice to a Non-Borrowing Spouse provided for under this Note will be given by delivering it or by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice by Lender of that different address. However, any notice under Paragraph 4 (D) shall be given by certified mail.

10. **OBLIGATIONS OF PERSONS UNDER THIS NOTE**
If more than one person signs this Note, each person is fully obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note only through sale of the Property covered by the Security Instrument.

11. **RELATIONSHIP TO SECOND NOTE**
(A) **Second Note.** Because Borrower will be required to repay amounts which the Secretary may make to or on behalf of Borrower pursuant to Section 255(i)(1)(A) of the National Housing Act and the Loan Agreement, the Secretary has required Borrower to grant a Second Note to the Secretary.

(B) **Relationship of Secretary Payments to this Note.** Payments made by the Secretary shall not be included in the debt due under this Note unless:
   (i)   This Note is assigned to the Secretary; or
   (ii)  The Secretary accepts reimbursements by the Lender for all payments made by the Secretary.

If the circumstances described in (i) or (ii) occur, then all payments made by the Secretary, including interest on the payments, shall be included in the debt.

(C) **Effect on Borrower.** Where there is no assignment or reimbursement as described in Paragraph 11 (B)(i) or (ii), and the Secretary makes payments to Borrower, such payments shall be made under the Second Note, and Borrower shall not be required to pay any amount of principal, interest and shared appreciation, if any, owed under this Note.

12. **THIRD-PARTY BENEFICIARY**
Except as set forth in 7(A)(ii) and only for an Eligible Non-Borrowing Spouse in this document, this Note does not and is not intended to confer any rights or remedies upon any person other than the parties. Borrower agrees that it is not a third-party beneficiary to the Contract of Insurance between HUD and Lender.

13. **SUCCESSORS AND ASSIGNS**
Notwithstanding anything to the contrary herein, upon the death of the last surviving Borrower, the Borrower's successors and assigns will be bound to perform Borrower's obligation under this Note.

14. **CAPITALIZED TERMS**
Capitalized terms not defined in this Note shall have the meanings ascribed to them in the Loan Agreement.

15. **NO ORAL AGREEMENTS**
THIS NOTE CONSTITUTES A "WRITTEN LOAN AGREEMENT" PURSUANT TO SECTION 26.02 OF THE TEXAS BUSINESS AND COMMERCE CODE, IF SUCH SECTION APPLIES. THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.



Ernest F. Geigenmiller Jr (Borrower)

05/26/2017
Date

One Reverse Mortgage, LLC
Company - NMLS #: 2052 - Loan Number: 3364717230

Loan Originator: Patrick McGahan
Loan Originator NMLS #: 871683

*Texas – 1st Note (Adjustable)*

*Page 4 of 4*

© *Bay Docs, LLC 03/01/2015*

q03364717230 0140 034 0404



q03364717230 0614 178 0101

ALLONGE TO NOTE

ALLONGE TO NOTE DATED:    May 26, 2017

LOAN NUMBER:

IN FAVOR OF:    One Reverse Mortgage, LLC

LOAN AMOUNT:    $127,500.00

AND EXECUTED BY:    Ernest F. Geigenmiller, Jr.

ADDRESS:    8635 Old Corpus Christi Hwy
San Antonio, TX 78223-4304

## WITHOUT RECOURSE
### Pay to the Order of

One Reverse Mortgage, LLC

By _____

Amy Christensen
Controller of One Reverse Mortgage, LLC

3913671970
2008/05 allonge.pcl

# EXHIBIT B

uuk 16555 rage 555 16pgs                                                    Doc# 2017010/989

*BB007A*

When recorded mail to:
One Reverse Mortgage, LLC
644 Woodward Avenue, Attn: Capture
5th Floor
Detroit, MI 48226

FHA Case Number: ▉▉▉▉▉
Loan Number: ▉▉▉▉▉
MIN: ▉▉▉▉▉

○ 2566030-4059624

_____ [Space Above This Line For Recording Data] _____

**ADJUSTABLE RATE DEED OF TRUST**
**(Texas Home Equity Conversion)**
**THIS DEED OF TRUST SECURES A REVERSE MORTGAGE LOAN**

**NOTICE OF CONFIDENTIALITY RIGHTS:  IF YOU ARE A NATURAL PERSON,
YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING
INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN
REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS:
YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

THIS DEED OF TRUST ("Security Instrument") is made on **May 26, 2017**. The trustor is **Ernest F. Geigenmiller,
Jr., an unmarried man** whose address is **8635 Old Corpus Christi Hwy, San Antonio, TX 78223** ("Borrower").
The term "Borrower" does not include the Borrower's successors and assigns. The trustee is **G. Tommy Bastian,
15000 Surveyor Blvd., Addison, TX 75001** ("Trustee"). *The beneficiary under this Security Instrument is
Mortgage Electronic Registration Systems, Inc. ("MERS") (solely as nominee for Lender and Lender's successors
and assigns) and the successors and assigns of MERS.  MERS is a separate corporation that is acting solely as a
nominee for Lender and Lender's successors and assigns. MERS is organized and existing under the laws of
Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.*
The lender is **One Reverse Mortgage, LLC** which is organized and existing under the laws of **California**, and
whose address is **9920 Pacific Heights Blvd., Suite 350, San Diego, CA 92121** ("Lender"). Lender is the
mortgagee as defined under the Texas Property Code Section 12.017. Borrower has agreed to repay to Lender
amounts which Lender is obligated to advance, including future advances, under the terms of a Home Equity
Conversion Mortgage Adjustable Rate Loan Agreement dated the same date as this Security Instrument ("Loan
Agreement").  The agreement to repay is evidenced by Borrower's Adjustable Rate Note dated the same date as this
Security Instrument ("Note"). This Security Instrument secures to Lender: (a) the repayment of the debt evidenced
by the Note, including all future advances, with interest at a rate subject to adjustment, and all renewals, extensions
and modifications of the Note, up to a maximum principal loan amount of **One Hundred Twenty-Seven Thousand
Five Hundred and 00/100 Dollars (U.S.$127,500.00)**; (b) the payment of all other sums, with interest, advanced
under Paragraph 5 to protect the security of this Security Instrument or otherwise due under the terms of this
Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security
Instrument and the Note and Loan Agreement. For this purpose, Borrower irrevocably grants and conveys to
Trustee, in trust, with power of sale, the following described property located in **Bexar** County, Texas:

One Reverse Mortgage, LLC                              Loan Originator: Patrick McGahan
Company - NMLS #: 2052 - Loan Number: 3364717230       Loan Originator NMLS #: 871683

*Texas - 1ᵗ MERS Security Instrument (Adjustable)*      *Page 1 of 14*          © *Bay Docs, LLC 03/01/2015*


q03364717230 0233 045 0114

Carrington – Geigenmiller000001

See legal description attached hereto and made a part hereof

which has the address of **8635 Old Corpus Christi Hwy, San Antonio, TX 78223** ("Property Address").

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, and fixtures now or hereafter a part of the property, including a manufactured housing unit. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property"; provided however, that the Property is limited to homestead property as defined as "Principal Residence" in the Loan Agreement.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal and Interest.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note.

2. **Payment of Property Charges.** Borrower shall pay all property charges consisting of property taxes, hazard insurance premiums, flood insurance premiums, ground rents, condominium fees, planned unit development fees, homeowner's association fees, and any other special assessments that may be required by local or state law in a timely manner, and shall provide evidence of payment to Lender, unless Lender pays property charges by withholding funds from monthly payments due to the Borrower or by charging such payments to a line of credit as provided for in the Loan Agreement.

3. **Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including but not limited to fire and flood for which Lender requires insurance. Such insurance shall be maintained in the amounts and for the periods that Lender requires, Lender has the discretion to increase or decrease the amount of any insurance required at any time provided the amount is equal to or greater than any minimum required by the Secretary of Housing and Urban Development ("Secretary"). Whether or not Lender imposes a flood insurance requirement, Borrower shall at a minimum insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. If the Lender imposes insurance requirements, all insurance shall be carried with companies approved by Lender, and the insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of and in a form acceptable to Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss to Lender, instead of to Borrower and Lender jointly. Insurance proceeds shall be applied to restoration or repair of the damaged Property, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied first to the reduction of any indebtedness under a Second Note and

One Reverse Mortgage, LLC
Company - NMLS #: 2052 - Loan Number: 3364717230

Loan Originator: Patrick McGahan
Loan Originator NMLS #: 871683

*Texas - 1st MERS Security Instrument (Adjustable)*     *Page 2 of 14*     © *Bay Docs, LLC 03/01/2015*



q03364717230 0233 045 0214

Carrington – Geigenmiller000002

Second Security Instrument held by the Secretary on the Property and then to the reduction of the indebtedness under the Note and this Security Instrument (as described in Paragraph 15) held by the Secretary on the Property and then to the reduction of the indebtedness under the Note and this Security Instrument. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

**4. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's Principal Residence after the execution of this Security Instrument and Borrower (or at least one Borrower, if initially more than one person are Borrowers) shall continue to occupy the Property as Borrower's Principal Residence for the term of the Security Instrument.

Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a Principal Residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**5. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in Paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments. Borrower shall promptly discharge any lien which has priority over this Security Instrument in the manner provided in Paragraph 14(C).

If Borrower fails to make these payments or pay the property charges required by Paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of property taxes, hazard insurance and other items mentioned in Paragraph 2.

To protect Lender's security in the Property, Lender shall advance and charge to Borrower all amounts due to the Secretary for the Mortgage Insurance Premium ("MIP") as defined in the Loan Agreement as well as all sums due to the loan servicer for servicing activities ("Servicing Fee") as defined in the Loan Agreement. Any amounts disbursed by Lender under this Paragraph shall become an additional debt of Borrower as provided for in the Loan Agreement and shall be secured by this Security Instrument.

**6. Inspection.** Lender or its agent may enter on, inspect or make appraisals of the Property in a reasonable manner and at reasonable times provided that Lender shall give the Borrower notice prior to any inspection or appraisal specifying a purpose for the inspection or appraisal which must be related to Lender's interest in the Property. If the Property is vacant or abandoned or the loan is in default, Lender may take reasonable action to

---

One Reverse Mortgage, LLC
Company - NMLS #: 2052 - Loan Number: 3364717230

Loan Originator: Patrick McGahan
Loan Originator NMLS #: 871683

*Texas - 1st MERS Security Instrument (Adjustable)*          Page 3 of 14          © *Bay Docs, LLC  03/01/2015*



q03364717230 0233 045 0314

Carrington - Geigenmiller000003

protect and preserve such vacant or abandoned Property without notice to the Borrower. Any expenditures made in connection with the protection and preservation of the Property may be paid with Loan Advances, as defined in the Loan Agreement, and added to the outstanding balance to the extent the expenditures are for any of the following Borrower obligations: (a) taxes; (b) insurance; (c) costs of repairs or maintenance performed by a person or company that is not an employee of Lender or a person or company that directly or indirectly controls, is controlled by, or is under common control with Lender; (d) assessments levied against the Principal Residence; and (e) any lien that has, or may obtain, priority over Lender's lien as it is established in the Loan Documents, as defined in the Loan Agreement. Although Lender may take action under this Paragraph 6, Lender does not have to do so.

**7. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation, or other taking of any part of the Property, or for conveyance in place of condemnation shall be paid to Lender. The proceeds shall be first applied to the reduction of the indebtedness under the Second Note and Second Security Instrument (as described in Paragraph 15) held by the Secretary on the Property, and then to the reduction of the indebtedness under the Note and this Security Instrument. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**8. Fees.** Lender may collect fees and charges authorized by the Secretary.

**9. Non-Borrowing Spouse.** Borrower, N/A, represents that Borrower is married under the laws of **N/A ("State of Celebration")** to N/A ("Non-Borrowing Spouse"), who is not a Borrower under the terms of the "Note," "Loan Agreement" or this Security Instrument. For purposes of this Security Instrument, the status of "spouse" shall be determined by the State of Celebration if there is a conflict as to whether or not the Borrower is married between the State of Celebration and the state where the Borrower resides. **"State of Celebration"** means the state in which the marriage ceremony was performed.

(A) **Eligible Non-Borrowing Spouse**. A Non-Borrowing Spouse identified by the Borrower who meets, and continues to meet, the Qualifying Attributes requirements established by the Secretary that the Non-Borrowing Spouse must satisfy in order to be eligible for the Deferral Period.

(B) **Ineligible Non-Borrowing Spouse**. A Non-Borrowing Spouse who does not meet the Qualifying Attributes requirements established by the Secretary that the Non-Borrowing Spouse must satisfy in order to be eligible for the Deferral Period.

**10. Grounds for Acceleration of Debt.**
(A) **Due and Payable – Death**.
    (i) Except as provided in Paragraph 10(A)(ii), Lender may require immediate payment in full of all sums secured by this Security Instrument if a Borrower dies and the Property is not the Principal Residence of at least one surviving Borrower.

    (ii) Lender shall defer the Due and Payable requirement under Paragraph 10(A)(i) above for any period of time ("Deferral Period") in which a Non-Borrowing Spouse identified in Paragraph 9 qualifies as an Eligible Non-Borrowing Spouse and certifies all of the following conditions are, and continue to be, met:

        a   Such Eligible Non-Borrowing Spouse remained the spouse of the identified Borrower for the duration of such Borrower's lifetime;
        b   Such Eligible Non-Borrowing Spouse has occupied, and continues to occupy, the Property as



q03364717230 0233 045 0414

**Carrington – Geigenmiller000004**

[his/her] Principal Residence;

   c  Such Eligible Non-Borrowing Spouse has established legal ownership or other ongoing legal right to remain in the Property;

   d  All other obligations of the Borrower under the Note, the Loan Agreement and this Security Instrument continue to be satisfied; and

   e  The Note is not eligible to be called due and payable for any other reason.

This sub-paragraph (ii) is inapplicable or null and void if an Eligible Non-Borrowing Spouse is or becomes an Ineligible Non-Borrowing Spouse at any time. Further, during a deferral of the due and payable status, should any of the conditions for deferral cease to be met such a deferral shall immediately cease and the Note will become immediately due and payable in accordance with the provisions of Paragraph 7 (A)(i) of the Note.

**(B)  Due and Payable - Sale.**  Lender may require immediate payment in full of all sums secured by this Security Instrument if all of a Borrower's title in the Property (or his or her beneficial interest in a trust owning all or part of the Property) is sold or otherwise transferred and no other Borrower retains title to the Property in fee simple, or retains a leasehold under a lease for not less than 99 years which is renewable or a lease having a remaining period of not less than 50 years beyond the date of the 100th birthday of the youngest Borrower, or retains a life estate in the Property (or retaining a beneficial interest in a trust with such an interest in the Property). A deferral of due and payable status is not permitted when a Lender requires immediate payment in full under this paragraph.

**(C)  Due and Payable with Secretary Approval.**  Lender may require immediate payment in full of all sums secured by this Security Instrument, upon approval of the Secretary, if:

   (i)  The Property ceases to be the Principal Residence of a Borrower for reasons other than death and the Property is not the Principal Residence of at least one other Borrower; or

   (ii)  For a period of longer than twelve (12) consecutive months, a Borrower fails to occupy the Property because of physical or mental illness and the Property is not the Principal Residence of at least one other Borrower; or

   (iii)  Borrower fails to maintain the priority of Lender's lien on the Property, after Lender gives notice to Borrower, by promptly discharging any lien that has priority or may obtain priority over the Lender's lien within ten (10) days after the date Borrower receives the notice. Lender shall not require immediate payment in full if Borrower: (A) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (B) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings so as to prevent the enforcement of the lien or forfeiture of any part of the Property; or (C) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to all amounts secured by Lender's lien on the Property

A deferral of due and payable is not permitted when a Lender requires immediate payment in full under Paragraph 10(C).

**(D)  Notice and Certification to Lender.**  Borrower shall complete and provide to the Lender on an annual basis a certification, in a form prescribed by the Lender, stating whether the Property remains the Borrower's Principal Residence and, if applicable, the Principal Residence of his or her Non-Borrowing Spouse. Where a Borrower has identified a Non-Borrowing Spouse in Paragraph 9 and the identified Non-Borrowing Spouse

One Reverse Mortgage, LLC

Company - NMLS #: 2052 - Loan Number: 3364717230

Loan Originator: Patrick McGahan

Loan Originator NMLS #: 871683

*Texas - 1ˢᵗ MERS Security Instrument (Adjustable)*     **Page 5 of 14**     © *Bay Docs, LLC  03/01/2015*



q03364717230 0233 045 0514

qualifies as an Eligible Non-Borrowing Spouse the Borrower shall also complete and provide to the Lender on an annual basis an Eligible Non-Borrowing Spouse certification, in a form prescribed by the Lender, certifying that all requirements for the application of a Deferral Period continue to apply and continue to be met. During a Deferral Period, the annual Principal Residence certification must continue to be completed and provided to the Lender by the Eligible Non-Borrowing Spouse. The Borrower shall also   notify Lender whenever any of the events listed in Paragraph 10(B) and (C) occur.

(E) **Notice to Secretary and Borrower.**  Lender shall notify the Secretary and Borrower whenever the loan becomes due and payable under Paragraph 10(B) and (C). Lender shall not have the right to commence foreclosure until Borrower has had thirty (30) days after notice to either:

(i)  Correct the matter which resulted in the Security Instrument coming due and payable; or

(ii)  Pay the balance in full; or

(iii) Sell the Property for the lesser of the balance or ninety five percent (95%) of the appraised value and apply the net proceeds of the sale toward the balance; or

(iv) Provide the Lender with a deed in lieu of foreclosure.

(F) **Notice to Secretary and Eligible Non-Borrowing Spouse.** Lender shall notify the Secretary and any Eligible Non-Borrowing Spouse whenever any event listed in Paragraph 10(B) and (C) occurs during a Deferral Period.

(G) **Trusts.** Conveyance of a Borrower's interest in the Property to a trust which meets the requirements of the Secretary, or conveyance of a trust's interests in the Property to a Borrower, shall not be considered a conveyance for purposes of this Paragraph 10. A trust shall not be considered an occupant or be considered as having a Principal Residence for purposes of this Paragraph 10.

**11. No Deficiency Judgments.**  Borrower shall have no personal liability for payment of the debt secured by this Security Instrument.  Lender may enforce the debt only through sale of the Property.  Lender shall not be permitted to obtain a deficiency judgment against Borrower if this Security Instrument is foreclosed.  If this Security Instrument is assigned to the Secretary upon demand by the Secretary, Borrower shall not be liable for any difference between the mortgage insurance benefits paid to Lender and the outstanding indebtedness, including accrued interest, owed by Borrower at the time of the assignment.

**12. Reinstatement.**  Borrower has a right to be reinstated if Lender has required immediate payment in full. This right applies even after foreclosure proceedings are instituted. To reinstate this Security Instrument, Borrower shall correct the condition which resulted in the requirement for immediate payment in full. Foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding shall be added to the principal balance. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two (2) years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the Security Instrument.

**13. Deferral Period Reinstatement.**  If a Deferral Period ceases or becomes unavailable because a Non-Borrowing Spouse no longer satisfies the Qualifying Attributes for a Deferral Period and has become an Ineligible Non-

One Reverse Mortgage, LLC
Company - NMLS #: 2052 - Loan Number: 3364717230

Loan Originator: Patrick McGahan
Loan Originator NMLS #: 871683

*Texas - 1st MERS Security Instrument (Adjustable)*          *Page 6 of 14*          © *Bay Docs, LLC 03/01/2015*



q03364717230 0233 045 0614

Borrowing Spouse, neither the Deferral Period nor the Security Instrument may be reinstated. In the event a Deferral Period ceases because an obligation of the Note, the Loan Agreement or this Security Instrument has not been met or the Note has become eligible to be called due and payable and is in default for a reason other than death, an Eligible Non-Borrowing Spouse may have a Deferral Period and this Security Instrument reinstated provided that the condition which resulted in the Deferral Period ceasing is corrected within thirty (30) days. A Lender may require the Eligible Non-Borrowing Spouse to pay for foreclosure costs and reasonable and customary attorney's fees and expenses properly associated with the foreclosure proceeding, such costs may not be added to the Principal Balance. Upon reinstatement by an Eligible Non-Borrowing Spouse, the Deferral Period and this Security Instrument and the obligations that it secures shall remain in effect as if the Deferral Period had not ceased and the Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) the Lender has accepted a reinstatement of either the Deferral Period or this Security Instrument within the past two (2) years immediately preceding the current notification to the Eligible Non-Borrowing Spouse that the mortgage is due and payable; (ii) reinstatement of either the Deferral Period or this Security Instrument will preclude foreclosure in the future, or (iii) reinstatement of either the Deferral Period or Security Instrument will adversely affect the priority of the Security Instrument.

14. **Lien Status.**

   (A) **Modification.** Borrower agrees to extend this Security Instrument in accordance with this Paragraph 14(A). If Lender determines that the original lien status of the Security Instrument is jeopardized under state law (including but not limited to situations where the amount secured by the Security Instrument equals or exceeds the maximum principal amount stated or the maximum period under which loan advances retain the same lien priority initially granted to loan advances has expired) and state law permits the original lien status to be maintained for future loan advances through the execution and recordation of one or more documents, then Lender shall obtain title evidence at Borrower's expense. If the title evidence indicates that the Property is not encumbered by any liens (except this Security Instrument, the Second Security Instrument described in Paragraph 15(A) and any subordinate liens that the Lender determines will also be subordinate to any future loan advances), Lender shall request the Borrower to execute any documents necessary to protect the lien status of future loan advances. Borrower agrees to execute such documents. If state law does not permit the original lien status to be extended to future loan advances, Borrower will be deemed to have failed to have performed an obligation under this Security Instrument.

   (B) **Tax Deferral Programs.** Borrower shall not participate in a real estate tax deferral program, if any liens created by the tax deferral are not subordinate to this Security Instrument.

   (C) **Prior Liens.** Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien or forfeiture of any part of the Property; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to all amounts secured by this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within ten (10) days of the giving of notice.

15. **Relationship to Second Security Instrument.**

   (A) **Second Security Instrument.** In order to secure payments which the Secretary may make to or on behalf of Borrower pursuant to Section 255(i)(1)(A) of the National Housing Act and the Loan Agreement, the

One Reverse Mortgage, LLC
Company - NMLS #: 2052 - Loan Number: 3364717230

Loan Originator: Patrick McGahan
Loan Originator NMLS #: 871683

*Texas - 1ˢᵗ MERS Security Instrument (Adjustable)*          Page 7 of 14          © *Bay Docs, LLC 03/01/2015*



q03364717230 0233 045 0714

Secretary has required Borrower to execute a Second Note and a Second Security Instrument on the Property.

**(B) Relationship of First and Second Security Instruments.** Payments made by the Secretary shall not be included in the debt under the Note unless:

    (i)   This Security Instrument is assigned to the Secretary; or

    (ii)  The Secretary accepts reimbursement by the Lender for all payments made by the Secretary.

If the circumstances described in (i) or (ii) occur, then all payments by the Secretary, including interest on the payments, but excluding late charges paid by the Secretary, shall be included in the debt under the Note.

**(C) Effect on Borrower.** Where there is no assignment or reimbursement as described in (B)(i) or (ii) and the Secretary makes payments to Borrower, then Borrower shall not:

    (i)   Be required to pay amounts owed under the Note, or pay any rents and revenues of the Property under Paragraph 23 to Lender or a receiver of the Property, until the Secretary has required payment in full of all outstanding principal and accrued interest under the Second Note; or

    (ii)  Be obligated to pay interest or shared appreciation under the Note at any time, whether accrued before or after the payments by the Secretary, and whether or not accrued interest has been included in the principal balance under the Note.

**(D) No Duty of the Secretary.** The Secretary has no duty to Lender to enforce covenants of the Second Security Instrument or to take actions to preserve the value of the Property, even though Lender may be unable to collect amounts owed under the Note because of restrictions in this Paragraph 15.

**16. Forbearance by Lender Not a Waiver.** Any forbearance by Lender in exercising any right or remedy shall not be a waiver of, or preclude the exercise of, any right or remedy.

**17. Successors and Assigns Bound; Joint and Several Liability.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender. An assignment made in accordance with the regulations of the Secretary of Housing and Urban Development shall fully relieve Lender of Lender's obligations under this Security Instrument. Borrower may not assign any rights or obligations under this Security Instrument or under the Note, except to a trust that meets the requirements of the Secretary. Borrower's covenants and agreements shall be joint and several. However, any person who signs this Security Instrument, but does not execute the Note: (a) is signing this Security Instrument only to mortgage, grant and convey the person's interest in the Property under the terms of this Security Instrument and to comply with the requirements of Section 50(k)(1), Article XVI of the Texas Constitution; (b) is not obligated to pay the sums secured by this Security Instrument and is not to be considered a guarantor or surety; (c) agrees that this Security Instrument establishes a voluntary lien on the homestead and constitutes the written agreement evidencing the consent of each owner and each owner's spouse; (d) is not a Borrower for purposes of Paragraph 10 (A), (B) and (C); and (D) agrees that Lender and Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of the Note. Notwithstanding anything to the contrary herein, upon the death of the last surviving Borrower, the Borrower's successors and assigns will be bound to perform Borrower's obligations under this Security Instrument.

**18. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address all Borrowers jointly designate. Any notice to Lender shall be given by first

---

One Reverse Mortgage, LLC
Company - NMLS #: 2052 - Loan Number: 3364717230

Loan Originator: Patrick McGahan
Loan Originator NMLS #: 871683

*Texas - 1ˢᵗ MERS Security Instrument (Adjustable)*        **Page 8 of 14**        © *Bay Docs, LLC  03/01/2015*

q03364717230 0233 045 0814


Carrington – Geigenmiller000008

class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice to a Non-Borrowing Spouse provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower, Lender or Non-Borrowing Spouse when given as provided in this Paragraph 18.

**19. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**20. Borrower's Copy.** Borrower shall be given one conformed copy of the Note, the Loan Agreement and this Security Instrument.

**21. Third-Party Beneficiary.** Except as set forth in Paragraph 10(A)(ii) and only for an Eligible Non-Borrowing Spouse the Security Instrument does not and is not intended to confer any rights or remedies upon any person other than the parties. Borrower agrees that it is not a third-party beneficiary to the Contract of Insurance between HUD and Lender.

**22. Capitalized Terms.** Capitalized terms not defined in this Security Instrument shall have the meanings ascribed to them in the Loan Agreement.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

**23. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by this Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this Paragraph 23.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by this Security Instrument is paid in full.

**24. Foreclosure. It is the express intention of Lender and Borrower that Lender shall have a fully enforceable lien on the Property. It is also the express intention of Lender and Borrower that Lender's default remedies**

---

One Reverse Mortgage, LLC
Company - NMLS #: 2052 - Loan Number: 3364717230

Loan Originator: Patrick McGahan
Loan Originator NMLS #: 871683

*Texas - 1st MERS Security Instrument (Adjustable)*          *Page 9 of 14*          © *Bay Docs, LLC 03/01/2015*



q03364717230 0233 045 0914

Carrington - Geigenmiller000009

shall include the most expeditious means of foreclosure available by applicable law, including, without limitation, foreclosure under a power of sale. However, if the foreclosure is for a ground other than those described in paragraph 10(A) and (B), the lien evidenced by this Security Instrument may be foreclosed only by court order. Lender shall follow any rules of civil procedure promulgated by the Texas Supreme Court related to the foreclosure of liens under Section 50(a)(7), Article XVI of the Texas Constitution, if applicable. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Paragraph 24, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

Lender may request Trustee to proceed with foreclosure under the power of sale. Any such request shall comply with such rules of civil procedure as they may apply. Trustee is hereby authorized and empowered, and it shall be Trustee's special duty, upon such request of Lender, to sell the Property, or any part thereof, at public auction to the highest bidder for cash, in one or more parcels and in any order Trustee determines, with or without having taken possession of the Property. Any such sale (including notice thereof) shall comply with the applicable requirements, at the time of the sale, of Section 51.002 of the Texas Property Code or, if and to the extent such statute is not then in force, with the applicable requirements, at the time of the sale, of the successor statute or statutes, if any, governing sales of Texas real property under powers of sale conferred by deeds of trust. If there is no statute in force at the time of the sale governing sales of Texas real property under powers of sale conferred by deeds of trust, such sale shall comply with applicable law, at the time of the sale, governing sales of Texas real property under powers of sale conferred by deeds of trust.

Trustee shall deliver to the purchaser who acquires title to the Property pursuant to the foreclosure of the lien a Trustee's deed conveying the Property with general warranty of title by Borrower. Borrower covenants and agrees to defend generally the purchaser's title to the Property against all claims and demands. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, court costs and reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Property is sold pursuant to this Paragraph 24, Borrower or any person holding possession of the Property through Borrower shall immediately surrender possession of the Property to the purchaser at that sale. If possession is not surrendered, Borrower or such person shall be tenants at sufferance and may be removed by writ of possession.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 10, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 24 or applicable law.

**25. Lien Priority.** The full amount secured by this Security Instrument shall have the same priority over any other liens on the Property as if the full amount had been disbursed on the date the initial disbursement was made, regardless of the actual date of any disbursement. The amount secured by this Security Instrument shall include all direct payments by Lender to Borrower and all other Loan Advances permitted by this Security Instrument for any purpose. This lien priority shall apply notwithstanding any state constitution, law or regulation, except that this lien priority shall not affect the priority of any liens for unpaid state or local governmental unit special assessments or taxes.

One Reverse Mortgage, LLC
Company - NMLS #: 2052 - Loan Number: 3364717230

Loan Originator: Patrick McGahan
Loan Originator NMLS #: 871683

*Texas - 1st MERS Security Instrument (Adjustable)*          Page 10 of 14          © Bay Docs, LLC 03/01/2015



q03364717230 0233 045 1014

Carrington - Geigenmiller000010

**26. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall provide a release of this Security Instrument to Borrower or Borrower's designated agent in accordance with applicable law. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under applicable law.

**27. Substitute Trustee; Trustee Liability.** All rights, remedies and duties of Trustee under this Security Instrument may be exercised or performed by one or more trustees acting alone or together. Lender, at its option and with or without cause, may from time to time, by power of attorney or otherwise, remove or substitute any trustee, add one or more trustees, or appoint a successor trustee to any Trustee without the necessity of any formality other than a designation by Lender in writing. Without any further act or conveyance of the Property the substitute, additional or successor trustee shall become vested with the title, rights, remedies, powers and duties conferred upon Trustee herein and by applicable law.

Trustee shall not be liable if acting upon any notice, request, consent, demand, statement or other document believed by Trustee to be correct. Trustee shall not be liable for any act or omission unless such act or omission is willful.

**28. Subrogation.** Any of the proceeds of the Note used to take up outstanding liens against all or any part of the Property have been advanced by Lender at Borrower's request and upon Borrower's representation that such amounts are due and are secured by valid liens against the Property. Lender shall be subrogated to any and all rights, superior titles, liens and equities owned or claimed by any owner or holder of any outstanding liens and debts, regardless of whether said liens or debts are acquired by Lender by assignment or are released by the holder thereof upon payment.

**29. Partial Invalidity.** It is the express intention of Lender and Borrower to structure this reverse mortgage loan to conform to the provision of the Texas Constitution applicable to reverse mortgage loans as defined by Section 50(a)(7), Article XVI of the Texas Constitution. If, from any circumstance whatsoever, any promise, payment, obligation or provision of the Agreement, this Security Instrument or any other loan document involving this reverse mortgage is held to be invalid under applicable law, then any promise, payment, obligation or provision shall be reduced to the limit of such validity, or eliminated as a requirement if necessary for compliance with such law, and such document shall be automatically reformed without the necessity of the execution of any new amendment or new document.

In the event any portion of the sums intended to be secured by this Security Instrument cannot be lawfully secured hereby, payments in reduction of such sums shall be applied first to those portions not secured hereby.

**30. Adjustable Rate Feature.** Under the Note, the initial stated interest rate of **Four and 583/1000's** percent (**4.583%**) which accrues on the unpaid principal balance ("Initial Interest Rate") is subject to change, as described below. When the interest rate changes, the new adjusted interest rate will be applied to the total outstanding principal balance. Each adjustment to the interest rate will be based upon the One-Year London Interbank Offered Rate ("LIBOR") as made available in the "Money Rates" section of the Wall Street Journal ("Index") plus a margin, rounded to three digits to the right of the decimal point.. If the Index is no longer available, Lender will be required to use any index prescribed by the Department of Housing and Urban Development. The new index will have a historical movement substantially similar to the original index, and the new index and margin will result in an annual percentage rate that is substantially similar to the rate in effect at the time the original index becomes unavailable.

Lender will perform the calculations described below to determine the new adjusted interest rate. The interest rate may change on the first day of **June, 2018 and on that day of each succeeding year,** ("Change Date") until the

---

One Reverse Mortgage, LLC

Company - NMLS #: 2052 - Loan Number: 3364717230

Loan Originator: Patrick McGahan

Loan Originator NMLS #: 871683

*Texas - 1st MERS Security Instrument (Adjustable)*       *Page 11 of 14*       © *Bay Docs, LLC  03/01/2015*



q03364717230 0233 045 1114

Carrington - Geigenmiller000011

loan is repaid in full. "Change Date" means each date in which the interest rate could change.

The value of the Index will be determined, using the most recent Index figure available thirty (30) days before the Change Date ("Current Index"). Before each Change Date, the new interest rate will be calculated by adding a margin to the Current Index. The sum of the margin plus the Current Index, subject to the rate limitations below, will be called the "Calculated Interest Rate" for each Change Date. The Calculated Interest Rate will be compared to the interest rate in effect immediately prior to the current Change Date (the "Existing Interest Rate").

The interest rate will never increase or decrease by more than two percentage points (2.0%) on any single Change Date.The interest rate will never be more than five percentage points (5.0%) higher or lower than the initial interest rate stated in Paragraph 2 of this Note.

The Calculated Interest Rate will be adjusted if necessary to comply with the rate limitation(s) described above and will be in effect until the next Change Date. At any Change Date, if the Calculated Interest Rate equals the Existing Interest Rate, the interest rate will not change.

**31. Obligatory Loan Advances.** Lender's responsibility to make Loan Advances under the terms of the Loan Agreement, including Loan Advances of principal to Borrower as well as Loan Advances for interest, MIP, Servicing Fees, and other charges shall be obligatory.

**32. Counseling.** Borrower attests that Borrower and Borrower's Non-Borrowing Spouse as defined in Paragraph 9 have received counseling regarding the advisability and availability of reverse mortgages and other financial alternatives not earlier than 180 days before, nor later than five (5) days before the date of this Security Instrument consistent with Section 50(k)(8), Article XVI, Texas Constitution.

**33. Prohibition on the Use of Certain Devices.** Borrower shall not use a credit card, debit card, solicitation check, or similar device to obtain Advances.

**34. Prohibition on Charges on Advances.** Borrower shall not be charged, and Lender shall not charge, a transaction fee in connection with any debit or advance made to the Borrower.

**35. Unilateral Amendments.** Neither the Lender nor the holder of any outstanding lien or debt shall unilaterally amend the terms of the Loan Agreement or this Security Instrument.

**36. Loan Agreement Made Twelve Days After Provision of Mandated Disclosure.** Borrower attests that this Loan Agreement is dated at least twelve (12) days after Borrower received the "Important Notice to Borrowers Related to Your Reverse Mortgage" required by Article XVI, Section 50(k)(9) of the Texas Constitution or successor provisions as may be amended from time to time.

**37. Nominee Capacity of MERS.** MERS serves as Beneficiary of record and secured party solely as nominee, in an administrative capacity, for Lender and its successors and assigns and holds legal title to the interests granted, assigned, and transferred herein. All payments or deposits with respect to the Secured Obligations shall be made to Lender, all advances under the Loan Documents shall be made by Lender, and all consents, approvals, or other determinations required or permitted of Beneficiary herein shall be made by Lender. MERS shall at all times comply with the instructions of Lender and its successors and assigns. If necessary to comply with law or custom, MERS (for the benefit of Lender and its successors and assigns) may be directed by Lender to exercise any or all of those interests, including without limitation, the right to foreclose and sell the Property, and take any action required of

One Reverse Mortgage, LLC
Company - NMLS #: 2052 - Loan Number: 3364717230

Loan Originator: Patrick McGahan
Loan Originator NMLS #: 871683

*Texas - 1st MERS Security Instrument (Adjustable)*    *Page 12 of 14*    © *Bay Docs, LLC  03/01/2015*

q03364717230 0233 045 1214



*Carrington - Geigenmiller000012*

Lender, including without limitation, a release, discharge or reconveyance of this Security Instrument. Subject to the foregoing, all references herein to "Beneficiary" shall include Lender and its successors and assigns

**38. Riders to this Security Instrument.**  If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.
[Check all riders that are applicable].

|  | Condominium Rider |  | PUD Rider |
|---|---|---|---|
|  | Shared Appreciation Rider |  | Other |

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.



ERNEST F. GEIGENMILLER JR (BORROWER)

*[Acknowledgment on following page]*

One Reverse Mortgage, LLC
Company - NMLS #: 2052 - Loan Number: 3364717230

Loan Originator: Patrick McGahan
Loan Originator NMLS #: 871683

*Texas - 1st MERS Security Instrument (Adjustable)*          *Page 13 of 14*          © *Bay Docs, LLC  03/01/2015*

q03364717230 0233 045 1314

Carrington – Geigenmiller000013

State of TEXAS                    §

County of Bexar .                 §

Before me, Ana P. Garcia _____, the undersigned authority, on this day personally appeared **Ernest F. Geigenmiller Jr**, known to me (or proved to me through (describe identity card or other document):

_____Driver License_____) to be the person(s) whose name is subscribed to the foregoing instrument, and acknowledged to me that he/she/they executed the same for the purposes and consideration therein expressed.

Given under my hand and seal on **May 26, 2017.**

(Seal)

ANA P GARCIA
Notary ID # 129286066
My Commission Expires
January 30, 2021

Notary Public Ana P Garcia

My Commission Expires: January 30, 2021

One Reverse Mortgage, LLC
Company - NMLS #: 2052 - Loan Number: 3364717230

Loan Originator: Patrick McGahan
Loan Originator NMLS #: 871683

*Texas - 1st MERS Security Instrument (Adjustable)*          *Page 14 of 14*          © *Bay Docs, LLC 03/01/2015*



q03364717230 0233 045 1414

Carrington - Geigenmiller000014

EXHIBIT A - LEGAL DESCRIPTION

Tax Id Number(s): 109230040030

Land Situated  in the City of San Antonio in the County of Bexar in the State of TX

New City Block 10923 Block 4, Lot 2A

The property address and tax parcel identification number listed are provided solely for informational purposes

Commonly known as:  8635 Old Corpus Christi Hwy, San Antonio, TX 78223-4304

THE PROPERTY ADDRESS AND TAX PARCEL IDENTIFICATION NUMBER LISTED ARE PROVIDED SOLELY FOR INFORMATIONAL PURPOSES

Carrington - Geigenmiller000015

Doc# 20170107989
# Pages 16
06/06/2017   9:17AM
e-Filed & e-Recorded in the
Official Public Records of
BEXAR COUNTY
GERARD C. RICKHOFF
COUNTY CLERK
Fees $82.00

STATE OF TEXAS
COUNTY OF BEXAR
This is to Certify that this document
was e-FILED and e-RECORDED in the Official
Public Records of Bexar County, Texas
on this date and time stamped thereon.
06/06/2017   9:17AM
COUNTY CLERK, BEXAR COUNTY TEXAS



# EXHIBIT C



**Reverse Mortgage Servicing Department**
P.O. Box 40724 • Lansing, Michigan 48901-7924
(866) 278-2008 Office
(866) 447-2022 Fax

September 21, 2022

ESTATE OF: ERNEST F. GEIGENMILLER
8635 OLD CORPUS CHRISTI HWY
SAN ANTONIO, TX  78223-4304

### Mortgage Due & Payable Notification

RE: Reverse Mortgage Loan Number: 

Dear Estate Representative,

Please accept our sincerest condolences on the recent passing of the borrower. We realize these are very difficult times for everyone involved and we will do our best to help you get through this process. Unfortunately, we are required to advise you of some important information regarding the reverse mortgage on the home. We apologize in advance, but we are bound by specific guidelines mandated by the Department of Housing and Urban Development (HUD).

As you may, or may not, know, there was a reverse mortgage on the property that is insured by HUD. We are here to provide you with all of the available options for satisfying the loan. We realize that this may be the last thing on your mind at this time, but please know that we are here to assist you through this process.

The reverse mortgage in the amount of $42,138.80*, as calculated to the end of this current month, is technically in default, due to the death of the borrower.

This default must be resolved by any of the following methods, in accordance with applicable Federal and/or investor guidelines:

A. The outstanding balance* on the reverse mortgage must be paid-in-full within 30 days of the date of this letter with wired or certified funds.

B. If the outstanding balance on the mortgage is not paid-in-full, or the property is not sold within 30 days, we are required to initiate foreclosure proceedings. If applicable laws or regulations cause a delay in us initiating the foreclosure proceedings, we will initiate the foreclosure proceeding after any applicable legal or regulatory prohibitions end.

> ➤ **Please know, however, that there are time extensions past this deadline that may be available to you, and which we may be able to request on your behalf, provided you satisfy the requirements set forth below. Please note that any extensions must be approved by HUD.**
> ➤ In order for us to evaluate you for an extension and to obtain this extension for you, we need to receive the following from you:

PLEASE SEE LAST PAGE FOR IMPORTANT DISCLOSURES




a letter within the next 30 days detailing your intentions with the property (please fill out and return the attached letter of intent),

proof of executorship of the estate (for example, filing(s) or the application with the probate court),

proof that the property is for sale or proof that you are attempting to pay off the loan, and a copy of the death certificate.

➤ **If you recently provided this information to Reverse Mortgage Funding LLC, it is not necessary to re-send the documents to us.** In addition to this requirement, if an extension is approved by HUD, we must also receive updates from you every 30 days during this extension period. We may also require additional documentation or information from you.

➤ Please note that interest, service fees, and mortgage insurance premiums (if applicable) will continue to accrue during the extension period.

C. The mortgage will be released and no deficiency judgment filed if the property sells, or is conveyed by will or operation of law to the borrower's estate or heirs, for at least 95% of the appraised value, even if the outstanding loan balance is greater than the current appraised value.

➤ Please contact us as soon as possible for more information if you are interested in this option and believe that the property value is less than the outstanding principal balance.

D. Provide the Lender with a deed in lieu of foreclosure.

➤ Essentially, selecting this option avoids foreclosure by allowing the executor of the estate to deed the property back over to the investor of the loan - at no cost to the estate. If you are interested in this option, please contact us as soon as possible to see if you may qualify.

**Whichever option that you choose, HUD guidelines require that we obtain a full appraisal on the property. You may be receiving a phone call from our appraisal vendor in the coming weeks to attempt to schedule an appointment to visit the property. Your estate may request an appraisal, at their own expense, if an estimate of the property's current value is desired. Please note that all appraisals must be completed by a HUD-certified appraiser.**

If there is a surviving spouse who was not a borrower on the reverse mortgage, please contact us immediately to discuss whether there may be any other options available.

Please note that if the reverse mortgage had available funds in a Tax & Insurance Set Aside (or Lifetime Expectancy Set Aside) to pay for property taxes and/or insurance, those funds are no longer available due to the due and payable status of the loan. You will be responsible for paying for any future tax and insurance obligations on the



property from this point forward.

Again, we are sorry to have to deal with these business matters during this difficult time.    Please call us at your earliest convenience to discuss how you would like to proceed.

Our toll-free number is (866) 278-2008 and we are available to assist you from 8:00am-6:00pm EST Monday through Thursday, and 8:00am-5:00pm EST on Friday.

Respectfully,

Reverse Mortgage Servicing Department

* Please note that you would need to call us to obtain an updated payoff figure.

---

**This is an attempt to collect a debt.  However, if your loan is currently, or was previously involved in a bankruptcy where your case was discharged and/or you are surrendering the real property in which Reverse Mortgage Funding LLC has an interest, we are not seeking personal liability against you.  We are pursuing our rights as they relate to the real property under the terms of the Deed of Trust or Mortgage.**

---

**"Assert and protect your rights as a member of the armed forces of the United States. If you are or your spouse is serving on active military duty, including active military duty as a member of the Texas National Guard or the National Guard of another state or as a member of a reserve component of the armed forces of the United States, please send written notice of the active duty military service to the sender of this notice immediately."**





**Reverse Mortgage Servicing Department**

P.O. Box 40724 • Lansing, Michigan 48901-7924
(866) 278-2008 Office
(866) 447-2022 Fax

## Letter of Intent

Loan Number: █████████
Borrower Name: ESTATE OF: ERNEST F. GEIGENMILLER
Property Address: 8635 Old Corpus Christi Hwy SAN ANTONIO, TX 78223-4304

Please utilize the form below to document your intentions regarding the property listed above. If you intend to sell the home or otherwise pay the balance due in full, this information and the required supporting documentation is crucial for us to obtain additional time extensions from HUD for you, if necessary, to satisfy the loan or sell the home. **You must also provide a copy of the death certificate and proof that you are authorized to act on behalf of the estate (for example, a copy of any application for probate or filings with probate court).**

**Please complete both pages of this form within 30 days from the date of the attached letter and mail it to the address above or fax it to (866) 447-2022.**

| Description of Intention (Check option that applies) | Information/Documentation needed from you |
|---|---|
| ____Intend on listing the property for sale. | Please provide a copy of the listing agreement, MLS printout, or proof that it is listed "For Sale by Owner" |
| ____Intend on obtaining financing or pay off the loan balance to keep the property. | Please provide proof that financing has been requested and is in process or that the estate has available funds to pay off the loan balance and it is the estate's intention to do so. |
| ____Intend on requesting a short sale on the property. | Please call to discuss this option in more detail with a specialist at (866) 278-2008. |
| ____Intend on requesting that the property be deeded back to the owner of the loan. | Please call to discuss this option in more detail with a specialist at (866) 278-2008. |
| ____Request that the servicing department proceed with foreclosure on the property. | Please ensure that you have signed below if you are selecting this option. |





**Reverse Mortgage Servicing Department**
P.O. Box 40724 • Lansing, Michigan 48901-7924
(866) 278-2008 Office
(866) 447-2022 Fax

**Letter of Intent Page 2**

**By completing this form and signing below, you are <u>not</u> obligating yourself to take the actions above.  This form simply documents your intentions.  In order for us to request an extension of time from HUD on your behalf, you must provide a copy of the death certificate and the documentation listed above, if you intend to list the property for sale or obtain financing to keep the property, along with proof of executorship of the estate.**

_____    _____    _____
Signature                                          Printed Name                                     Date

_____    _____    _____
Signature                                          Printed Name                                     Date



| Servicemembers Civil Relief<br>Act Notice Disclosure | U.S. Department of Housing<br>and Urban Development<br>Office of Housing | OMB Approval No. 2502-0584<br>Expire 11/30/2024 |
|---|---|---|

## Legal Rights and Protections Under the SCRA

Servicemembers on "active duty" or "active service," or a spouse or dependent of such a servicemember may be entitled to certain legal protections and debt relief pursuant to the Servicemembers Civil Relief Act (50 USC §§ 3901-4043) (SCRA).

## Who May Be Entitled to Legal Protections Under the SCRA?

- Regular members of the U.S. Armed Forces (Army, Navy, Air Force Marine Corps and Coast Guard).
- Reserve and National Guard personnel who have been activated and are on Federal active duty
- National Guard personnel under a call or order to active duty for more than 30 consecutive days under section 502(f) of title 32, United States Code, for purposes of responding to a national emergency declared by the President and supported by Federal funds.
- Active service members of the commissioned corps of the Public Health Service and the National Oceanic and Atmospheric Administration.
- Certain United States citizens serving with the armed forces of a nation with which the United States is allied in the prosecution of a war or military action.

## What Legal Protections Are Servicemembers Entitled To Under the SCRA?

- The SCRA states that a debt incurred by a servicemember, or servicemember and spouse jointly, prior to entering military service shall not bear interest at a rate above 6% during the period of military service and one year thereafter, in the case of an obligation or liability consisting of a mortgage, trust deed, or other security in the nature of a mortgage, or during the period of military service in the case of any other obligation or liability.
- The SCRA states that in a legal action to enforce a debt against real estate that is filed during, or within one year after the servicemember's military service, a court may stop the proceedings for a period of time, or adjust the debt. In addition, the sale, foreclosure, or seizure of real estate shall not be valid if it occurs during or within one year after the servicemember's military service unless the creditor has obtained a valid court order approving the sale, foreclosure, or seizure of the real estate.
- The SCRA contains many other protections besides those applicable to home loans.

## How Does A Servicemember or Dependent Request Relief Under the SCRA?

- In order to request relief under the SCRA from loans with interest rates above 6% a servicemember or spouse must provide a written request to the lender, together with a copy of the servicemember's military orders. Reverse Mortgage Servicing Dept, PO Box 40724, Lansing MI 48901-7924 Toll-Free (866) 278-2008
- There is no requirement under the SCRA, however, for a servicemember to provide a written notice or a copy of a servicemember's military orders to the lender in connection with a foreclosure or other debt enforcement action against real estate. Under these circumstances, lenders should inquire about the military status of a person by searching the Department of Defense's Defense Manpower Data Center's website, contacting the servicemember, and examining their files for indicia of military service. Although there is no requirement for servicemembers to alert the lender of their military status in these situations, it still is a good idea for the servicemember to do so.

## How Does a Servicemember or Dependent Obtain Information About the SCRA?

- Servicemembers and dependents with questions about the SCRA should contact their unit's Judge Advocate, or their installation's Legal Assistance Officer. A military legal assistance office locator for all branches of the Armed Forces is available at https://legalassistance.law.af.mil/
- "Military OneSource" is the U.S. Department of Defense's information resource. If you are listed as entitled to legal protections under the SCRA (see above), please go to www.militaryonesource.mil/legal, or call (800) 342-9647 (toll free from the United States) to find out more information. Dialing instructions for areas outside the United States are provided on the website.

form HUD-92070<br>(6/2017)

## IMPORTANT DISCLOSURES

This communication is from a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose. Notwithstanding the foregoing, if you are currently in a bankruptcy proceeding or have received a discharge in bankruptcy, this communication is for informational purposes only and is not an attempt to collect a debt.  If you are represented by an attorney, please provide this notice to your attorney.

We use third-party providers to perform certain services. We remain responsible for all actions taken by such third-party providers with respect to such services.

**Notice of Error and Request for Information**
Federal law gives customers the right to notify us of an error regarding the servicing of their loan or to request information regarding their loan. If you wish to provide a notice of error or a request for information, you must write to us at the following address: PO Box 40719, Lansing, MI 48901. The letter must provide the customer's name, loan number, and description of the error or detailed list of the information being requested.

**If your property is located in the State of Texas:**
COMPLAINTS REGARDING THE SERVICING OF YOUR MORTGAGE SHOULD BE SENT TO THE DEPARTMENT OF SAVINGS AND MORTGAGE LENDING 2601 NORTH LAMAR, SUITE 201, AUSTIN, TX 78705. A TOLL-FREE CONSUMER HOTLINE IS AVAILABLE AT 877-276-5550. A complaint form and instructions may be downloaded and printed from the Department website located at www.sml.texas.gov or obtained from the department upon request by mail at the address above by telephone listed above or by email at smlinfo@sml.texas.gov.

**If your property is located in the State of New York:**
Your servicer is either a registered servicer or exempt servicer registered with the Superintendent of the New York State Department of Financial Services.  For further information or to make a complaint regarding your servicer you may contact the New York State Department of Financial Services Consumer Assistance Unit at (800) 342-3736 or by visiting www.dfs.ny.gov.

**If your property is located in the State of Arkansas:**
Your servicer is licensed in Arkansas and complaints about your servicer may be submitted to the Arkansas Securities Department via the Department's website (http://www.securities.arkansas.gov/) or toll-free at (800) 981-4429.

**If your property is located in the State of Oregon:**
Borrowers: The Oregon Division of Financial Regulation (DFR) oversees residential mortgage loan servicers who are responsible for servicing residential mortgage loans in connection with real property located in Oregon and persons required to have a license to service residential mortgage loans in this state. If you have questions regarding your residential mortgage loan, contact your servicer at (866) 654–0020 or by email at BC@reversedepartment.com. To file a complaint about unlawful conduct by an Oregon licensee or a person required to have an Oregon license, call DFR at 888-877-4894 or visit dfr.oregon.gov.

**If your property is located in the State of Hawaii:**
Your servicer is a licensed mortgage servicer in Hawaii.  Complaints may be submitted to the Hawaii Department of Financial Institutions at P.O. Box 2054, Honolulu, Hawaii 96805 or dfi@dcca.hawaii.gov.  A complaint form and instructions regarding how to file a complaint are available at http://cca.hawaii.gov/dfi/file-a-complaint/.

